Good morning, Cameron Schlegel and Michael Reynolds, on behalf of Appellants, I'd like to reserve five minutes for rebuttal. May it please the Court, the dissemination of confidential firearm owner information to third parties violates the constitutional rights of millions of Californians. The right to privacy is at its apex, whereas here the government collects and compiles detailed personal information concerning the exercise of a fundamental constitutional right. AB 173's command that the California Department of Justice disseminate this confidential information to third parties without requiring a showing of need or imposing any mitigation standards is unprecedented. It is a grave violation of privacy, Second Amendment rights, and fundamental due process. Can you point me to a case where we've held that that is highly sensitive information? Yes, I'll point you to a couple of cases and a couple of concepts. First is that the Supreme Court has recognized in Nixon that the constitutional privacy interest is at base about a legitimate expectation of privacy because it really derives from the substantive due process formulation based on the Fourth Amendment's conception of privacy. And then in Department of Justice v. Reporters Commission, which I think is a very helpful case in the privacy context, the Supreme Court distinguished between the difference between scattered bits of information that might be in the public record and a neat compilation by the government and the heightened privacy interest that it hears when the government compiles the information. And so there, the FBI rap sheets that were at issue, the court recognized that there's a that outstrips the combined power of the bits of the information contained within. And I think that that privacy interest is at its apex, whereas here the information does inherently relate to the exercise. So whenever the government compiles the information and disseminates that, in this case it was to a research company, you're saying that there's this heightened privacy that occurs? Yes, Your Honor. I think that the Supreme Court's precedents recognize that interest. Are you making an analogy between the information that was provided here and rap sheets? Not necessarily, Your Honor. I think the particular situation that was presented in the Department of Justice case was about FOIA Exemption 7C, which recognized an exemption to disclosure for information that might pose a material risk of privacy to the individual. And so it was interesting in my view, because notwithstanding the fact that the criminal information is elsewhere in the public database, which was what the people who were seeking the information pointed out in that case, that was the crux of their argument, was this information is public elsewhere. And the Supreme Court, first turning to the basic informational right to privacy, which it held Congress was recognizing this very inherent concern when it enacted FOIA. So the court recognized that this FOIA exemption was based on the constitutional right to privacy. And the sensitive nature of a criminal background. Well, no, not necessarily, Your Honor. I think that actually other precedents and precedents in the Supreme Court recognize that there is not necessarily an inherent privacy interest in criminal records. It depends on the circumstances and what state law is. So in that particular case, the court did admittedly point out that there were only two states that allowed disclosure, but it expressly disclaimed to base its opinion on that notion, rather it emphasized Does that informational right to privacy survive DOPS? I believe so, yes, Your Honor. Why? Because I think it's still incorporated, either through the substantivity process or the incorporation doctrine. So the incorporation doctrine in McDonald v. Chicago, the Supreme Court recognized that the Second Amendment is a fundamental right incorporated in the concept of due process. So DOPS doesn't overturn Justice Douglas' decades-long pursuit to create this general right to privacy through the emanations and penumbras, most prominently in Griswold first. So that would be the first thing I'd note about DOPS, the court did not overturn the substantivity process precedents. And as Griswold recognizes, certain enumerated constitutional rights create a zone of privacy in which they can be exercised. And so I think that the notion of substantivity process and the incorporation doctrine, which is very similar to substantivity process, both are based on the concept that a liberty that is implicit in our society and implicit in the Constitution's text can be applicable to the states and must be recognized. Well, here we have a fundamental enumerated right. And so I think... You're talking about the Second Amendment right? I'm talking about the Second Amendment right. And can we go to that? All right. Absolutely. Can I ask, the way I see it is you're making three Second Amendment injury arguments. And let me know if this is correct. One, you're saying the fact that the information is going to the third party is injury itself. The second is that the information going to the third party could then leak to the public, which would create another injury. And the third is that your client's rights are chilled because of the fact that the information could potentially go out into the public. Is that correct how you're alleging your Second Amendment injuries? Generally, yes. I would slightly reframe the chilling argument. Yes. And how would you reframe the chilling argument? I think that the disclosure to the third party is in the first instance, particularly given the nature of what it's being disclosed for and the breadth of the disclosure is itself something that creates the chilling, not necessarily that it will be more broadly publicly disclosed. That's certainly a risk, but I don't think that that is a dispositive risk. And then on the chilling argument, as I read the complaint, it seems like the government already has all information for your clients. That's correct, Your Honor. And has that information already been turned over to the third party researchers? As we don't know the extent to which it has, we believe there was evidence adduced in the district court, of course, outside the pleadings and on the motion for planning. But then how are they being chilled if the third party already has information? Well, it wasn't publicly known, first of all, I would say, Your Honor, and then also not publicly known. So it was not known that this information before AB 173, and I think the government is going to push back against this, which I can explain going back to 2016, but I think it was not publicly known until AB 173 was enacted that this information was being shared with any third party researchers at any research institution. Well, I get that, but how are they being chilled today if knowing that the third party researchers already have their information? So as I understand it, and again, this is something that evidence wasn't produced on, but as I understand how the mechanism works, is that essentially the researchers are given access to these databases to use. So I don't know that it's a total offloading of the information to them per se. I think the state would be able to speak more to how that procedure works. But, in other words, I'm distinguishing between physical possession versus, I guess, a digital possession or access to. But as of today, it seems like they have access to your client's information. I would note that they weren't joined for a period of time, and it's unclear to the extent to which they've accessed that information. But I would say that the standing access to complete a broad range of research that is not necessarily tethered to the state's interest, and which particularly the statute doesn't test against the state's interest, itself is a fundamental violation of both the Second Amendment and of the informational privacy. So I think that that chilling concept is relevant. And I also think, related to the informational privacy claim, I think that when we look at chilling, the Supreme Court's extended the doctrine, both in relation to positively exercised First Amendment rights, and before Dobbs, when abortion was recognized as a fundamental right through the substantive due process clause, the Supreme Court, in situations very analogous to this, has recognized that even the mere possibility of information being publicly exposed, or exposed is a strong word, I would actually say, becoming potentially available to the public was enough to impose a burden on the exercise of the Second Amendment right through the chilling. And the Court's been very clear that it does not tolerate indirect attacks on the exercise of fundamental rights through efforts to chill them. So the sensitive information that you're concerned about is what? Everything in the database, Your Honor. I think that the compilation, the creation of the record by the government itself, and this is, I'd go back to the Department of Justice v. Reporters Commission case, is that the act of the government creating the compilation of a record of information that might otherwise be scattered about and not centralized presents a particular privacy risk, but also creates a specific privacy interest in the individual because that record is being created. It's not the dissemination, it's the compilation. Well, I think that the privacy interest in the first step in looking at whether there's a legitimate expectation of privacy, the privacy interest arises because of the compilation coupled with the fact that the information is being collected as a condition on the exercise of the fundamental constitutional right. And then I think that we get to dissemination on the question of tailoring, which really all the cases turn upon. If we look at the Wayland case, for example, where this was first recognized, the Court emphasized that it really almost assumed without deciding that there is a privacy interest in the information that was being collected. It related to fraud and prescriptions, but it emphasized that. I want to go back to Judge Froder's question because I think it's a very important one, which is what's the information that's highly sensitive? I'm trying to get that from you because, you know, you go to, I don't know, any store to buy beer, and they collect your date of birth. They collect your information. That's obviously tied to the Constitution as well. So in the 21st Amendment. So what makes it particularly sensitive, the name, date of birth, address here? I think it's perhaps three things put together. It's the fact that the government is compiling them and putting them in one centralized location, which has been recognized in precedent. Well, can I ask you about that? Because what's the difference between compiling it for this purpose and they have to have the information for law enforcement purposes as well? Do they not? I think that that comes down to tailoring, Your Honor, and I can point Your Honor to, I think there's also a different Second Amendment justification for that. So if I may answer both questions in turn, it's the information that's in the databases. The information, I think, is sensitive because the government collects it. It concerns the exercise of a fundamental constitutional right. It's different than information just scattered about. And I think the precedents well recognize that. It also paints a detailed picture of the individual's expressive decision to exercise their Second Amendment right. And looking at other analogs, as this Court did in Crawford, if we look at other subjects. I know to exercise my 21st Amendment right to obtain alcohol when I go to the liquor store. Is that somehow, if that is disseminated, do I have, am I being injured in some way? Perhaps. I would say that's distinguishable from the issue that's before the Court, in part because the 21st Amendment is not a fundamental right that's enumerated in the first ten rights in the Constitution. But I also am not aware of the government compiling that information in a centralized database and the extent to which. And here we know that this is very detailed. And, Your Honor, I apologize. I was going to go back to. Actually, I recall what I was saying. The same information that they compiled for other purposes, so I don't see how the compiling is a violation of any right. Well, so to be clear, Your Honor, I'm not contending that the compilation is a violation of any right. The compilation is what creates the privacy interest. That's what the Supreme Court's precedents have distinguished between, is showing the difference between, to Your Honor's point, about perhaps what might in the public realm and scattered about in court records, for example, which is something that the Supreme Court has referenced. In isolation, they may have been public at one time or in a piece, but when the government takes it and puts it together in one record, that creates a heightened privacy interest. And so I think that this case is actually decided on the absence of tailoring. The strongest authority for that position, the compiling of any kind of information, implicates a privacy interest. What's the authority for that? That would be Department of Justice versus Reporters Commission. Okay. Because you had said Supreme Court precedents. I'd also just point the court to the last paragraph in the Whelan decision as well, which recognizes this and the other cases stem from. To Your Honor's question about the Second Amendment, right, and how this information is collected, I think that there's a distinct difference. This is also recognized as a case that's discussing ETFs regulation, but arguably the historical basis, right, in the Supreme Court recognizing Heller, this longstanding exception to the Second Amendment for prohibited persons possessing firearms. So I think that the textual basis for the government's ability to collect information, to conduct a background check, or to facilitate background checks, is based in a different aspect of the Second Amendment, right? If that's my question, then how is this a burden of your Second Amendment rights? Robin says we have to look at the textual elements of the Second Amendment, which is keep and bear arms. How does the fact that a third party have access to information burden that protection? So I think that's where, when we get into the analysis of what the original meaning was, right, so first we look at the text and understand the scope of the text, and I'm going to use the prohibited persons example because I think it's related here, right? In that situation, you would just be looking at can the government ask you for this information as a condition on exercising your Second Amendment rights to, it furthers their interest in prohibited persons not having it. The Second Amendment exempts that. I think AB 173 goes a step further where the question becomes is there a historical basis where the Second Amendment would permit the government to take information and share it. But you're skipping a step. You have to go to whether or not the conduct is being, is protected by the Second Amendment. Right. And under the textual elements, which is to keep and bear arms, how does the access to the third party, how does that infringe that conduct that's protected by the Second Amendment? I think the conduct that is implicated here is that you have to look at the corpus juris of which AB 173 forms a part, right? It is the entire statutory process for collecting the information and the reasons why that burdens the right in the first instance, the right to purchase firearms, ammunition, or get a license to conceal carry. And no, because this information you have to fill out, get the information no matter what. And then this only allows a third party access to that information. So to me, it seems like there's no change on what your clients have to do. But I think the burden still triggers Second Amendment scrutiny, Your Honor, because the burden is that this information is. Well, what's the additional burden to your client is my point. Well, then it's the disclosure of the information. So what's that burden? How does that burden the Second Amendment right? That's what I'm trying to get at. So I think through the chilling doctrine, which we discussed, but. That's fair. That makes sense. But if we're not willing to extend that, I still think that the burden, because you can't have this information, right, in the first place without exercising, without the exercise of the Second Amendment rights. So the burden in the first instance is on the process that takes place in order to exercise the right. This is now a condition that has been added to that. And part of the challenge with this is that this is such a rare. We've got about two minutes. Do you want to say something to rebuttal? I did want to say something to rebuttal. When you come back, if you didn't, talk to me about how Clapper doesn't foreclose your arguments on this chilling argument. Because it seems that Clapper seems to be on point. Good morning, Your Honors. And may it please the Court, Sebastian Graves with the Attorney General. California has a serious gun violence problem. And part of the problem, as the legislature has recognized, is that too little is known about its causes, in large part because too little research has been done into that question. As part of its effort to address this shortcoming, the state enacted AB 173, confirming the agency's authority to share a limited set of firearms data and a limited set of vetted research organizations for limited purposes. I have a question. Does it still collect? Does the state still collect Social Security numbers? I wasn't clear in the record on this. So the state never collects those numbers. The local licensing agencies, they use forms that the state sort of promulgates. And no, at this point, this report form that the state has gotten, that Social Security has promulgated, does not include that field. That's as of January, correct? Yes, Your Honor. Previously it did. So the state never collected that. The law provides that local licensing agency the directive authority to send that application form itself to the state. So the state never collected it. The agency's application form has that field. It was on the form. Did it get into the database? That form never made it to DOJ, Your Honor. The issuance of licenses, replications of licenses, didn't make it to DOJ with the actual application form, which is the only form that includes that field. That never makes it to DOJ. So what was disseminated didn't include the Social Security number? Exactly. To your broader questions earlier about the sensitivity or lack thereof in this information, again, it's very clear the basic biographical information in this database that may be shared with researchers is not sensitive enough to implicate the 40-minute informational privacy right in this case. We're talking about name, birth date. Your Honor, your opinion in Phillips recently last year noted that this type of information is not the type of information like, for example, a number in Bloodshaw or Doe v. General, but sensitive medical information, sexual history, that type of thing. This basic biographical information does not arise, and that's why I don't think we even get to the balancing analysis on the first instance. On the second analysis, Your Honor, and I take your Honor's questions, we don't think that the conduct being regulated here implicates the key promoter of the virus. So the government's main argument is that the idea that the information will be released to the public is purely speculative, but that already happened in this, didn't it? Didn't all this information get released to the public? So there was a data exposure incident by DOJ itself. It's important to note that AB 173 has nothing to do with that. It deals only with sharing information with other entities, which is no allegation that they've ever done anything that revealed that information to the public. Right, but if it's happened once, why is it speculative to say that it can happen again? First, Your Honor, again, DOJ takes data privacy very seriously and has addressed the failings that led to that exposure incident. And again, the institutions that have had this information, had access to this information for decades, there's no allegation that they've ever actually had any data exposure incidents of this sort. So there's no evidence, there's no allegations. So that was really outside what's at stake in this case? Exactly, Your Honor. You want to say that it had nothing to do with the dashboard exposure? That's right, Your Honor. Was there an investigation of why that data was exposed? I know it's outside of this record, but why? Do we know why? Sure. So it actually was in the record. It's not part of the complaint for sure, but in the district court, my colleagues introduced it into the record. There was a Morse and Enforcer investigating the exposure, and they found there was a combination of lack of communication of policies, lack of sort of explicit policies making clear that for this type of public-facing database, there should be no personal identifying information sort of uploaded in the first instance, and it also appears that the software essentially that was being used to create this public-facing dashboard, it didn't seem like there was adequate training on precisely how it could be used so that the. . . So there was no. . . My question was, essentially, was there any evidence that it was intentionally exposed? No, Your Honor, certainly not. And that was DOJ, not the research examiner, Your Honor. And then to the question on the chilling aspect, so I guess according to the complaint, the California DOJ has each of its clients' information already, and has the third-party researcher had access to that information already?  The question about if it's access to the data that's sort of housed at DOJ versus a transfer of data, it is a transfer of data, so it is sent from DOJ to the actual receiving end. I would just sort of clarify that. You know, the AFS database is constantly updated, so it could be the case that someone purchased a firearm after the last data transfer, and so that sort of new data wouldn't have been already transferred. So their argument could be that they're chilled from updating the data. Okay. So, again, we think that that wouldn't sort of provide, first, a Article III entry to your question earlier about there not being an actual harm imposed, but by that they're essentially avoiding exercising their rights to avoid what they perceive as a potential data leak harm or potential harm in and of itself, and the initial sharing. We think that those aren't Article III entries that could be revised to see anything else. I see in California it doesn't contest that the Second Amendment right can be chilled, right? We should apply the same chilling analysis that we applied to the First Amendment right and to, you know, free dogs and abortion, right? Well, the court in the St. David County Gun Owners Committee said that there is no chilling harm outside of, and that is the First Amendment sort of over-breath doctrine. So this Court's precedent says there is no chilling doctrine. Well, why would there be a distinction? Because the Court has recognized that the type of First Amendment is a sort of special right and that it needs room for breathing room. That's what it's been called. So is the Second Amendment a non-special right? No, no, the First Amendment right, as the Supreme Court has recognized, is unique in its need for breathing room. That's if people should apologize. That's a member of the Supreme Court case. Has the Supreme Court ever said that there is a chilling effect for a Second Amendment? No, Your Honor. But what's the distinction? I don't understand. What's the distinction of why the Second Amendment right, which the Supreme Court has said is a fundamental right, shouldn't be treated as a disfavored right? Why wouldn't it also be entitled to a chilling protection? I think the source-based law varies, and that's what we've recognized. Can you just explain why? I think, Your Honor, it's essentially that the First Amendment has this, as the Supreme Court has recognized, a kind of broader need for breathing room. I was repeating myself, Your Honor. That's what the Supreme Court has said. What about the abortion right? I'm not sure how that comes into play, Your Honor. Well, I think the Supreme Court, or at least someone, I think this Court or even the Supreme Court has recognized a chilling protection for the abortion right. So the question is sort of, is there a role for a burden that is separate from a direct prohibition on the right? I think potentially where it comes into play, the test would essentially be a meaningfully constrained analysis, and we don't think that any type of burden here would meaningfully constrain plaintiffs or anybody else from exercising their Second Amendment rights. My question is basically, why would we treat the Second Amendment differently from other amendments which are protected by this chilling aspect? If you don't have an answer, I'm sorry. Well, what are we talking about in terms of chilling here? I thought that chilling here is their subjective reaction to what's happening,  whereas the First Amendment, you have something that is objectively going to affect everyone. That's right, Your Honor. Yes. I'll open up that one for you. But if there are no further questions, we'd be happy to. Okay. Thank you, counsel. Thank you. Thank you, Your Honor. Since I believe I left with Judge Mendoza's question about Clapper, I think that this really turns upon it. And admittedly, Clapper is a very different context in the sense that it, I would say, first related to the government's collection of the information, and it related narrowly to the chilling doctrine. It didn't relate to any fundamental rights. So to go to Judge Bunate's question, I was just asked to my colleague here, I think that the incorporation doctrine and substantive due process answer that question. We have, besides the Second Amendment, there's the First Amendment and there used to be abortion that are positively exercisable fundamental rights. And to Judge Schroeder's point about how this expands, the First Amendment recognizes this applies to everybody. So does this. It applies to everybody who exercises their Second Amendment rights. And I do think to put kind of a cherry on top of the entire analysis, which is that this expectation of privacy exists, I want to read from the Supreme Court's opinion. I'm sorry, I didn't understand. I'm not sure I understood your answer because I thought Clapper tells us that an attenuated or speculative future harm is not enough for standing. I guess that's what I thought Clapper told me, and I didn't understand your answer, too. So I think that, I guess I had in mind a different issue, and I didn't have Clapper in front of me, so I was going off of pure memory. I had in mind a different issue from Clapper, which was that I thought it related to the collection of the information, the potential to chill. As far as the injury concern goes, we would say that the disclosure of the information to third parties, right, and I'm not speaking to the very broad public. I would say that the third-party researchers are members of the public, and it's public in that sense, that that disclosure of information creates the injury in and of itself. And the reason for that is, it's too pronged, is that from the United States Department of Justice, excuse me, United States Department of Justice versus Reporters Committee for Freedom of the Press at 764, the court held, this is with the FBI rap sheets, the issue here is whether the compilation of otherwise hard-to-obtain information alters the privacy interests implicated by disclosure of that information. Plainly, there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country, and a computerized summary located in a single clearinghouse of information. So that got to the privacy interest at the first level of the analysis. When we get to tailoring, I think that's where there's the biggest distinction between this statute and any of the other privacy cases, which is that there is, the statute pays lip service to the idea that an individual's identity should not be disclosed, but contra every other state and federal statute dealing with compilations of information that are shared for research purposes or shared with third parties, there is absolutely no administrable mechanism to ensure that that protection, reported protection, is carried out. And that is to say nothing of the very nuanced and complicated circumstances that arise when we're dealing with aggregated data. We cite issues discussing NAFTA briefs. We cite the federal standards for that. We cite the other California state statutes, including information that is subject to AB 173, that is subject to sharing with these researchers. Where the researchers have to show that they need the material identifying the individuals to complete their research projects. That's something that's completely absent here. They get all of the information from millions of people without any showing of need, without any showing of how their research project relates to the state's interests or advances the state's interests. So Kathy, I'll turn this over if you want to start wrapping up. Yes. I think that covers everything I wanted to discuss, Your Honor. I appreciate the extra time. Thank you. Thank you, counsel. This case will be submitted, and we are in recess for this session. All rise. Hear ye, hear ye. All persons having had business before this hour or before the United States Court of Appeals for the Ninth Circuit will now depart for this one. Recession is adjourned.
judges: SCHROEDER, BUMATAY, MENDOZA